IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **SAUSALITO FOODS, a Nebraska Limited Liability Company,** | ) ) ) | **CASE NO. 7:07CV5015** |
| Plaintiff, | ) ) | |
| v. | ) ) | **MEMORANDUM AND ORDER** |
| **RHETT, INC. d/b/a MISS SCARLETT,** a California Corporation, **PEGGY LUPER, and RALPH LUPER,** | ) ) ) ) | |
| Defendants. | ) | |

This matter is before the Court on the Defendants' Motion to Dismiss or, in the Alternative, to Transfer Venue to the District of Arizona (Filing No. 13). The Plaintiff, Sausalito Foods, LLC ("Sausalito"), and the Defendants, Rhett, Inc. ("Rhett"), Peggy Luper and Ralph Luper ("Lupers"), have submitted briefs and indexes of evidence in support of their respective positions. For the reasons stated below, the Defendants' Motion to Dismiss will be granted, and the Plaintiff's action will be dismissed without prejudice.

**FACTUAL AND PROCEDURAL BACKGROUND**

Sausalito is a Nebraska limited liability company with its principal place of business in Omaha, Nebraska. (Complaint, Filing No. 1, ¶ 1). Rhett is a California corporation with its principal place of business in California, and the Lupers are individuals residing in Arizona. (*Id.*). Sausalito brought this action against Rhett and the Lupers on June 5, 2007, alleging that Rhett purchased gourmet food items from Sausalito from March 5, 2007, through April 11, 2007, totaling $53,093.19 in value, and failed to pay for the purchases; and that Rhett and the Lupers executed a promissory note in favor of Sausalito on or about February 28, 2007, for earlier sums due to Sausalito from Rhett, and then failed to make

payments on the note as required, resulting in damages of $86,736.66.  (*Id.,* ¶¶ 4-15). Rhett and the Lupers moved to dismiss, alleging that this Court lacks personal jurisdiction over them, and that Nebraska is not the proper venue for the action.  (Filing No. 13).

Rhett is not registered to do business in Nebraska, does not advertise or solicit business from consumers in Nebraska, and has no employees, stores, offices, telephone numbers, mailing addresses or operations in Nebraska.  The Lupers, Rhett's exclusive owners and operators, do not maintain any telephone numbers or mailing addresses in Nebraska, do not own any real or personal property in Nebraska, and have never traveled to Nebraska.  (Affidavit of Peggy Luper, Filing No. 15-2 ("P. Luper Aff."), ¶¶ 3-4, 8-12; Affidavit of Ralph Luper, Filing No. 15-3 ("R. Luper Aff."), ¶¶ 7-8).

Sausalito has an office in Oregon and a manufacturing plant in Texas.  (P. Luper Aff. ¶¶ 14-15, 17-19, 21, 24; R. Luper Aff. ¶ 9; Affidavit of Rex Hansen, Filing No. 17 ("Hansen Aff."), ¶ 6).  The invoices attached to Sausalito's Complaint (Filing No. 1, Ex. C) show its address as Tualatin, Oregon, and its phone number as bearing an Oregon area code –  503.  The March 1, 2007, letter from Sausalito to Peggy Luper, establishing the credit terms forming the basis for one of Sausalito's causes of action, appears on Sausalito letterhead.  It shows an address of Tualatin, Oregon, and a telephone number with area code 402 – a Nebraska area code, although nothing on the letterhead otherwise refers to Nebraska or alerts the reader to the fact that the telephone number includes a Nebraska area code (Filing No. 1, Ex. B).

Sausalito contends that this Court has personal jurisdiction over Rhett and the Lupers because (1) the promissory note signed by the Lupers (Filing No. 1, Ex. A) contained a choice-of-law provision, stating: "This Note shall be construed in accordance

with the laws of the State of Nebraska;" (2) a similar promissory note signed by the Lupers in 2006 (Hansen Aff., Ex. A) contained the same choice-of-law provision; (3) negotiations for the February 2007 promissory note "were conducted mostly in part over the telephone with Peggy Luper in Arizona and [Sausalito's president Rex Hansen] in Nebraska (Hansen Aff. ¶ 4); (4) Peggy Luper should have been aware that Hansen was in Nebraska, as his telephone number had a 402 area code (*id.*); (5) after the Lupers signed the February 2007 promissory note, Peggy Luper ordered goods from Sausalito through Hansen, using his telephone number with the 402 area code (Hansen Aff. ¶¶ 5-6); and (6) the Revised Credit Terms that Sausalito sent to Peggy Luper on March 1, 2007, and that Peggy Luper agreed to and accepted on behalf of Rhett on March 6, 2007, stated that payment was to be sent "to a lock box account set up by Sausalito . . . [c]urrently this account is at First State Bank in Gothenburg, Nebraska." (Filing No. 1, Ex. B, p.2).

The Defendants argue that all Rhett's communications and business interactions with Sausalito were done through and with agents of Sausalito in Oregon (P. Luper Aff. ¶ 15); all Rhett's purchase orders to Sausalito were sent to its office in Oregon (*id.* ¶ 15); all invoices sent by Sausalito to Rhett bore an Oregon address (*id.* ¶ 17); all products shipped by Sausalito to Rhett were shipped from Texas to California (*id.* ¶ 18); when the Lupers communicated with Hansen about the promissory notes, they *believed* he was in Oregon (*id.* ¶¶ 21, 24; R. Luper Aff. ¶ 9; Affidavit of Peggy Luper, Filing No. 21-2 ("P. Luper Aff. #2") ¶¶ 4-6); and the telephone number used by Hansen and appearing on the Sausalito letterhead was for a cell phone, which Hansen could have been using at any location (Affidavit of Barry Riemer, Filing No. 21-3 ("Riemer Aff.") ¶¶ 5-10).

3

The Defendants seek dismissal of this action based on the Court's alleged lack of personal jurisdiction over them, contending that their right to due process will be violated if they are forced to defend themselves in this forum. Alternatively, they seek a transfer of venue to Arizona.

The Plaintiff, Sausalito, opposes the motion. Sausalito argues that the Defendants had sufficient contacts with Nebraska such that their right to due process would not be violated by making them defend against Sausalito's claims in this forum. Alternatively, Sausalito seeks a transfer of venue to Oregon.

## STANDARD OF REVIEW

To survive a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), a plaintiff "must state sufficient facts in the complaint to support a reasonable inference" that the defendants can be subjected to jurisdiction within the state. If jurisdiction is controverted, the plaintiff has the burden of proving the jurisdictional facts. *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004) (quoting *Block Indus. v. DHJ Indus., Inc.*, 495 F.2d 256, 259-60 (8th Cir. 1974)). The plaintiff's showing must be tested by affidavits and exhibits presented in support and in opposition to the motion. *Id.*

A plaintiff need only make a prima facie showing of personal jurisdiction over the Defendants to survive a motion to dismiss. *Digi-Tel Holdings, Inc. v. Proteq Telecommunications (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996). The Court must view the evidence in the light most favorable to the Plaintiff and must resolve all factual conflicts in its favor. *Romak USA, Inc. v. Rich*, 384 F.3d 979 (8th Cir. 2004).

**DISCUSSION**

In determining whether this Court has personal jurisdiction over a nonresident defendant, two issues are presented: (1) whether the requirements of the Nebraska long-arm statute, codified at Neb. Rev. Stat. § 25-536 (2006) are satisfied, and (2) whether the exercise of jurisdiction over the defendant will violate the Due Process Clause of the Fourteenth Amendment. *Minnesota Mining & Mfg. Co. v. Nippon Carbide Indus. Co., Inc.*, 63 F.3d 694, 696-97 (8th Cir. 1995), *cert. denied*, 516 U.S. 1184 (1996). Nebraska's long-arm statute has been interpreted to extend jurisdiction over nonresident defendants to the fullest degree allowed by the Due Process Clause of the United States Constitution. *Quality Pork Intern. v. Rupari Food Services, Inc.*, 675 N.W.2d 642, 648-49 (Neb. 2004). Thus, constitutional limits dictate whether personal jurisdiction over the Defendants is proper.

"Due process for personal jurisdiction over a nonresident defendant requires that the defendant's minimum contacts with the forum state be such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Internat. Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The nonresident defendant's conduct and connection with the forum state must be such that "he should reasonably anticipate being haled into court there," *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980), and it is essential that "'there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253

5

(1958)). "Purposeful availment" means that the defendant's contacts with the forum state must not be random, fortuitous, attenuated, or the result of unilateral activity of a third person or another party.  *Id.*

Once it has been determined that the nonresident defendant purposefully established minimum contacts with the forum state, such contacts must be analyzed in light of other factors to determine whether the exercise of personal jurisdiction over the nonresident defendant comports with "fair play and substantial justice."  *Id.* at 476 (quoting *Internat. Shoe Co. v. Washington*, 326 U.S. at 320).  The factors, as articulated by the Eighth Circuit Court of Appeals, are: "(1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties."  *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996) citing *Land-O-Nod Co. v. Bassett Furniture Indus., Inc.*, 708 F.2d 1338, 1340 (8th Cir. 1983); see also *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1073-74 (8th Cir. 2004).  The fourth and fifth factors are of secondary importance and not determinative.  *Land-O-Nod,* 708 F.2d at 1340.  In applying these factors, the central inquiry is the "'relationship among the defendant, the forum, and the litigation.'" *Id.* (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).

It is the third element of the above test -- the relationship between the cause of action and the contacts -- that gives rise to the distinction between specific and general jurisdiction.  Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within a forum state, while general jurisdiction refers to the

6

power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose. *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 819 (8th Cir. 1994) (citing *Sondergard v. Miles, Inc.*, 985 F.2d 1389, 1392 (8th Cir.), *cert. denied*, 510 U.S. 814 (1993)).  When specific jurisdiction exists, "[a]ll that is required is that a commercial actor purposefully direct its efforts toward residents of the forum state." *Bell Paper Box,* 22 F.3d at 820.  "[T]he Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed." *Burger King*, 471 U.S. at 474.

Sausalito does not appear to argue that this Court has general jurisdiction over the Defendants, but only specific jurisdiction with respect to the causes of action asserted by Sausalito.  There is no dispute that the Defendants' contacts with Nebraska are minimal, consisting of (1) telephone contacts with the Plaintiff's cell phone, having a 402 area code; (2) the acceptance of "revised credit terms" that required Rhett to remit payments to a lock box, "currently" established at a bank in Nebraska, and (3) the executing of a promissory note bearing a reference to the application of Nebraska law.

The Eighth Circuit has reaffirmed as recently as 2006, that "[c]ontact by phone or mail is insufficient to justify exercise of personal jurisdiction under the due process clause," *Johnson v. Woodcock,* 444 F.3d 953, 956 (8th Cir. 2006), citing *Porter v. Berall,* 293 F.3d 1073, 1076 (8th Cir. 2002).  Similarly, use of a banking facility in the forum state to arrange for payments is insufficient to satisfy due process. *Mountaire Feeds., Inc. v. Agro Impex, S.A.,* 677 F.2d 651, 656 (8th Cir. 1982).  While a choice-of-law provision in a contract is not to be ignored when determining whether a defendant has purposely invoked the

7

benefits and protections of a state's laws, such a provision standing alone is insufficient to confer personal jurisdiction. *Burger King,* 471 U.S. at 482.

When I consider the nature and quality of the Defendants' contacts in relation to the cause of action, I conclude that they are insufficient to support an exercise of personal jurisdiction over them without a violation of their due process rights. The Defendants' contacts with Nebraska were so attenuated that it cannot fairly be concluded that they should have anticipated being haled into court in this state. Because I find that this Court lacks personal jurisdiction over the Defendants, the Defendants' challenge to venue in this Court is moot, as are the parties' alternative proposals for transfers of venue to Arizona or Oregon.

## CONCLUSION

For all the reasons stated, I find that the Defendants did not purposefully establish minimum contacts with Nebraska, and I conclude that this Court's exercise of personal jurisdiction over the Defendants would not comport with "fair play and substantial justice." The Motion to Dismiss will be granted, and the Plaintiff's Complaint will be dismissed, without prejudice.

IT IS ORDERED:

1.  The Defendants' Motion to Dismiss (Filing No. 13) is granted;
2.  The Plaintiff's Complaint is dismissed, without prejudice.

DATED this 24th day of September, 2007.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge